**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-CV-2145-DDD-NYW

RDA HOTEL MANAGEMENT COMPANY, and
LAKEWOOD HOTEL COMPANY,

Plaintiffs,

v.

HUDSON SPECIALTY INSURANCE COMPANY,

Defendant.

---

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THEIR CLAIM FOR UNREASONABLE DELAY IN PAYMENT OF BENEFITS**

---

Defendant Hudson Specialty Insurance Company, by its attorneys Campbell, Wagner, Frazier & Dvorchak, LLC, hereby submits its Response in opposition to Plaintiffs' Motion for Partial Summary Judgment on their claim brought under C.R.S. § 10-3-1115 for alleged unreasonable delay in payment of benefits.

## INTRODUCTION

Plaintiffs' Motion is predicated upon an incomplete recitation of the factual circumstances relating to its claim. Plaintiffs (hereinafter collectively referred to as "RDA") premise their argument solely upon consideration of when the claim was reported (May 22, 2017) relative to when it was paid (August 29, 2019). When the circumstances surrounding the handling of RDA's claim are fully considered, a jury could reasonably find in Hudson's favor on RDA's statutory claim for unreasonable delay in payment of benefits.

There were two distinct phases to the handling of RDA's claim. RDA presented its claim in May of 2017 and withdrew if on October 18, 2017. In adjusting the claim Hudson agreed with RDA's own chosen repair contractors as to both the scope of hail damage, as well as the cost of repair. Hudson submitted its resulting Statement of Loss on October 10, 2017. RDA concedes that Hudson conducted this phase of the investigation on a timely basis. The actual cash value of the repairs contemplated by RDA's contractors barely exceeded RDA's $100,000 insurance policy deductible, prompting RDA to withdraw its insurance claim on October 18, 2017.

The second phase of the investigation began 18 months later when RDA's public adjuster submitted on April 19, 2019 an estimate and proof of loss, claiming hail damage beyond that which RDA had asked Hudson to consider in 2017. This April 2019 Proof of loss was 20 months late, as RDA's insurance policy required that RDA provide a complete inventory of claimed damages within 90 days of the loss. Despite this apparent breach of the policy terms, Hudson nevertheless agreed to re-open the claim, hired forensic engineering consultants to perform a re-inspection, and promptly paid RDA benefits for the actual cash value (less the policy deductible) of the additional damages identified through the re-inspection. .

RDA further concedes that Hudson completed this second phase of the investigation on a timely basis as well. Hence, RDA's claim for delay in payment of benefits is premised solely upon its perception that in 2017 Hudson's independent adjuster Bill Walls improperly relied upon RDA's own contractors to identify the extent of hail damage. In actuality, Mr. Walls' election to work with RDA's own contractors to

identify hail damage and to submit repair estimates complies with Colorado commonly accepted claim handling standards, and with Hudson's own expectations.

The timing of the claim handling process was dictated by RDA's initial withdrawal of its claim and later request to renew the claim to pursue additional claimed damages which its own contractors had disregarded during the 2017 phase of the investigation. These facts present competent and persuasive evidence that Hudson's claim handling and ensuing payment were reasonably prompt. These resulting issues of material fact preclude entry of summary judgment in favor of RDA on this issue.

**RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted that on May 22, 2017 RDA gave notice of that hail losses listed in Briana Miller's May 19, 2017 email (Exhibit C).

5. Admitted in part. The May 22, 2017 hail storm punctured a skylight and damaged two windows, but did not otherwise cause damage to the hotel's roof or curtain walls. See Exhibit A, J.S. Held report at p. 16.

6. Admitted in part. Hudson conducted its own investigation, but did so in concert with its insured, to address any additional hail damage as may be identified by its insured's repair contractors. Hudson 30(b)(6) depo. at pp. 115-117.

7. Hudson agrees with this assertion of a legal principle.

8. Hudson agrees with this assertion of a legal principle.

9. Admitted in part. Hudson agrees a reasonable investigation includes inspection of the property to determine the extent of hail damage, but submits that it does so in concert with the insured's own contractors, to reach an agreement as to the scope of necessary repair. Hudson 30(b)(6) depo at p. 115-117.

10. Hudson agrees with this assertion of a legal principle.

11. Admitted that Hudson utilized the services of an outside adjuster Bill Walls, but Mr. Walls' investigation was subject to Hudson's review. Hudson 30(b)(6) depo., p. 60.

12. Admitted.

13. Admitted.

14. Admitted

15. Admitted.

16. Admitted.

17. Admitted in part. Hudson also relied upon Haag Engineering's August 2019 report, as well as its own claim experience in analyzing its forensic consultants' recommendations. Exhibit B, Kaho Chan August 29, 2019 letter.

18. Admitted.

19. Admitted in part. RDA chose to voluntarily withdraw its claim in October of 2017, and did not ask Hudson to reopen the claim until April 19, 2019. Hudson agreed to re-inspect as requested, and submitted payment within seven days of receipt of its consulting engineers' ensuing reports. Exhibit B.

**STATEMENT OF ADDITIONAL DISPUTED FACTS**

1. RDA submitted to Hudson a written list of that hail damage which its building engineer and contractors had identified to have occurred as the result of the May 8, 2017 hail storm. Exhibit C, Briana Miller May 19, 2017 email.

2. Hudson's outside adjuster, Bill Walls walked the roof with the hotel building engineer Craig Ulrich. Mr. Walls and Mr. Ulrich observed no hail damage to the hotel's EPDM roof membrane. Walls' depo., p. 44 .

3. Mr. Walls retained Matthew Sitzmann of Haag Engineering to inspect the roof. Mr. Sitzmann detected no hail damage beyond that identified by RDA's contractors. Exhibit E, Haag Engineering June 16, 2017 report.

4. Mr. Walls worked with the hotel general manager, Briana Miller, and the building engineer Craig Ulrich to identify the extent of hail damage. Walls deposition, p. 59.

5. Mr. Walls agreed to have RDA's retained contractor submit bids identifying scope and cost of repair for purposes of preparing Mr. Walls' statement of loss to be submitted to Hudson. Walls deposition, pp. 66-68.

6. Hudson's election to allow RDA's own contractors to identify the scope and cost of repair complied with Hudson's claim handling policies and procedures. Hudson 30(b)(6) deposition, pp. 116-117.

7. Hudson's election to permit RDA's own contractors to identify the scope of resulting hail damage and cost of repair complied with applicable Colorado claim handling guidelines. Powers deposition, pp. 64-69.

8. Mr. Walls prepared a Statement of Loss in October 2017, which incorporated the estimated cost to conduct every aspect of repair identified by RDA's own contractors. Exhibit D, MCL Global October 10, 2017 Report and attachments.

9. Following the May 8, 2017 storm, building engineer Craig Ulrich was aware of hail denting to soft metals, such as to the vent caps, HVAC equipment and parapet wall cap flashing. RDA did not include these conditions in RDA's claim, because Mr. Ulrich did not consider there to have been any resulting harm to these soft metals. Ulrich deposition, p. 42, 58.

10. RDA withdrew its claim on October 18, 2017. Exhibit F, Briana Miller October 18, 2017 email.

11. RDA did not renew its claim, or assert a claim for damage to the soft metals to the HVAC and parapet wall covers until April 2019. RDA 30(b)(6) depo, p. 7.

12. RDA agrees Mr. Walls completed his 2017 investigation on a timely basis. RDA F.R.C.P. 30(b)(6) depo. at p. 29.

13. RDA agrees J.S. Held and Haag Engineering completed their 2019 investigations on a timely basis. RDA 30(b)(6) depo. at p. 8.

14. RDA's allegation of unreasonable delay is premised entirely upon its perception that Mr. Walls did not conduct a thorough investigation, RDA. 30(b)(6) depo. at p. 77.

15. Hudson’s claim handling expert opines that Hudson’s investigation was reasonably thorough. Exhibit G, Powers’ report.

16. RDA's claim handling expert opines it is RDA's obligation to work with its insurer to provide notice of perceived damage which is not included in Hudson's initial estimate. Beyer depo., pp. 22-24, 106.

17. RDA's insurance policy with Hudson obligated RDA to provide a complete inventory of claimed damages within 90 days of the loss. Exhibit H, Hudson policy, section 31.

## LEGAL STANDARD

Pursuant to F.R.C. P. 56, summary judgment is appropriate only when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. The presence of a dispute concerning a material fact precludes summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005).

The reasonableness of an insurer's conduct is measured objectively based on industry standards. *Am. Family & Mut. Ins. Co. v. Allen*, 102 P.3d 333 (Colo. 2004). Under Colorado law, it is reasonable for an insurer to challenge claims that are "fairly debatable." *Travelers Ins. Co. v. Savio,* 706 P.2d 1258 (Colo. 1985).

Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists. *Zolman v. Pinnacol Assurance,* 261 P.3d 490, 497 (Colo. App. 2011); V*accaro v. Am. Fam. Ins. Grp.,* 275 P.3d 750 (Colo. App. 2012). Hudson is unaware of an appellate decision under Colorado law wherein an insurer has been determined to have unreasonably delayed payment as a matter of law.

## ARGUMENT

Plaintiff's Motion lacks merit because it disregards the facts and circumstances which gives proper context to and explanation of the timing by which RDA's claim was paid. Plaintiff's argument also presumes that RDA holds purely a passive role with respect to the claim handling process. The terms of Hudson's policy, together with the expert testimony of both parties' endorsed claim handling experts, inform otherwise.

Following the May 8, 2017 hailstorm, the RDA Hotel's chief building engineer, Craig Ulrich walked the property to identify areas of hail damage. Mr. Ulrich shared his

observations with the Hotel's general manager, Briana Miller, who in turn contacted contractors with whom the hotel had worked in the past to further identify the scope of damage and prepare bids to perform the necessary repair. On May 19, 2017 Ms. Miller prepared an email in which she itemized the areas of hail damage observed by Mr. Ulrich and the Hotel's repair contractors. All of this occurred before RDA submitted its hail loss claim to Hudson.

Hudson's outside adjuster Bill Walls inspected the property accompanied by Mr. Ulrich, and neither of them observed any hail damage to the Hotel roof. Mr. Walls also retained a forensic engineering roofing consultant, Matthew Sitzmann of Haag Engineering to inspect the roof as well. Mr. Sitzmann issued a report stating the roofing EPDM membrane was not damaged by hail.

Upon eventual receipt of the promised repair bids submitted by RDA's contractors, Mr. Walls prepared a Statement of Loss to Hudson and RDA on October 10, 2017 itemizing $146,799 in repair costs, with an actual cash value (in light of depreciation) of $101,578. Mr. Walls' Statement of Loss contemplated repair of each component of damage identified by RDA and its repair contractors.

Upon receipt of Mr. Walls' Statement of Loss, RDA elected to withdraw its insurance claim. It did so because its insurance policy with Hudson had a $100,000 policy deductible, such that RDA was going to pay for the substantial portion of the contemplated repairs regardless of insurance.

Some 18 months later, on April 19, 2019 RDA, through its public adjuster Kevin Aguilar, submitted a request that Hudson re-open RDA's insurance claim. This request was accompanied by an estimate prepared by Mr. Aguilar which identified perceived

components of hail damage which had not been previously claimed by RDA. This estimate encompassed the cost to replace soft metal components on the Hotel's exterior which had been dented by hail. These conditions included perceived damage to mechanical equipment covers, parapet wall cap flashing and metal vertical trim on the guest room tower west-facing curtain wall.

Hudson re-opened the claim at RDA's request, and hired J.S. Held and Haag Engineering to perform a re-inspection. This re-inspection took place on June 25 and 26, 2019, and J.S. Held and Haag Engineering submitted their reports by August 22, 2019. Hudson paid to RDA within a week thereafter the actual cash value of the repairs recommended by J.S. Held.

J.S. Held's August 2019 estimate of $338,510 varied from Mr. Wall's October 2017 Statement of Loss of $146,799 in two material respects. First, J.S. Held gave RDA credit for replacing all 9 of the lobby skylight lenses, even though only 1 of the lenses of the skylight had been impacted by hail. This increased the estimated cost of repair by $72,000. Second, J.S. Held included in its estimate the cost to replace soft metals (parapet wall cap flashing, curtain wall vertical trim and mechanical equipment covers) which had been raised as an issue for the first time in Mr. Aguilar's April 19, 2019 estimate. Exhibit A at p. 15.

RDA has acknowledged in deposition that Mr. Walls performed his investigation on a timely basis and that the 2019 re-inspection performed by J.S. Held and Haag Engineering was timely as well. Hence, its claim for unreasonable delay in payment of benefits is distilled to the single alleged premise that Mr. Walls was remiss in failing to identify damage to soft metals during the 2017 phase of the investigation.

RDA's threshold argument that Hudson holds exclusive responsibility to identify the scope of hail damage misconstrues the respective obligations of the parties under the terms of the policy and accepted standards of care. Rather, determining the scope of hail damage is a cooperative and reciprocal process whereby the insured and its insurer work together to identify the scope of damage, and determine a fair cost of repair. RDA's endorsed standard of care expert Leslie Beyer recognized as much through her deposition testimony, in which she explained that in "99.9 percent" of cases within her experience the insured brings to the insurer's attention any damage identified by its contractor that was not included in the insurer's estimate, to provide the insurer the opportunity to supplement its estimate. Beyer depo. at pp.22-24, 106.

RDA's obligation to promptly bring to Hudson's attention those components of hail damage for which it seeks compensation is not only an insurance claim standard, it is an express term of RDA's insurance policy with Hudson. Section 31 of the Policy requires RDA to deliver within 90 days of the loss a Proof of Loss giving a "complete inventory of the damaged property and showing quantities, costs, value and particulars of loss claimed." This policy term imposes upon RDA the obligation to notify Hudson of any additional damage which it believes the Hotel sustained which was not reflected in Hudson's October 2017 Statement of Loss.

Chief building engineer Craig Ulrich was the RDA representative most knowledgeable regarding the extent of hail damage to the Hotel. Mr. Ulrich was aware from the outset of hail dents to soft metal components to the building's exterior. Ulrich deposition, pp. 42, 58. Mr. Ulrich chose not to reference these aspects of damage during his interaction with Mr. Walls because dings to metal covers to parapet walls and

mechanical equipment did not impair the function of the metal covers, and so was not a matter of concern to him. It apparently wasn't a matter of concern to RDA's repair contractor Seagren Construction either, since Seagren also did not include these components in its repair estimates. Exhibit D.

RDA's public adjuster, Kevin Aguilar, included the dents to metal trim and covers in his April 2019 estimate, even though no one within the RDA organization had conveyed a functional or aesthetic concern with regard to these conditions. In doing so, RDA missed by a wide margin the deadline for submission of its Proof of Loss called for by section 31 of the Policy. RDA was obligated to provide a complete inventory of all perceived damages within 90 days of the May 8, 2017 loss. Instead, RDA waited until 23 months had gone by before submitting a Proof of Loss, which included for the first time components of loss of which RDA, through Mr. Ulrich, had known from the outset.

Hudson would have been within its rights in refusing to reopen the claim to investigate new areas of claimed damage which RDA had not timely raised. Exhibit G, pp. 9 and 16. Instead, Hudson agreed to re-open the claim, and upon receipt of its engineering consultants' reports, paid to RDA the actual cash value to perform the repairs to damaged soft metals which RDA had belatedly brought to its attention. Hudson's actions in doing so were more than reasonable in agreeing to adjust an aspect of loss which RDA had waited so long to bring to Hudson's attention.

This timeline of events demonstrates that the timing of Hudson's payment of benefits is primarily attributable to RDA's own delays in complying with its obligations under the policy. RDA knew of damage to soft metal trim and covers from the outset, yet did not bring these perceived damages to Hudson's attention during the initial phase

of the claim. RDA also chose not to submit a Proof of Loss supplying an inventory of such perceived damage to Hudson. Because the soft metal cover denting was not a matter of concern, RDA chose to withdraw its claim and allow the issue to remain fallow until raised by its public adjuster almost two years down the road. Under these circumstances, a jury could well find Hudson's claim handling decisions and payment of benefits to RDA to have been reasonably prompt.

Hudson's claim handling expert, Brendon Powers opines that Hudson's claim handling was timely, reasonable and in compliance with applicable claim handling standards. Exhibit G. This expert testimony in and of itself creates a factual issue sufficient to defeat summary judgment.

Hudson has also asserted affirmative defenses, which if successful would defeat RDA's claim for unreasonable delay. Hudson has pled RDA's lack of cooperation in failing to divulge requested maintenance and repair information. See .Exhibit G at pp. 11 and 16. Hudson has also asserted defenses of waiver, laches and estoppel which are addressed in Hudson's Response in opposition to RDA's companion summary judgment motion. The presence of these affirmative defenses further serve to create factual issues material to RDA's statutory claim for unreasonable delay.

## CONCLUSION

For the foregoing reasons Hudson requests the court to deny RDA's summary judgment motion on their claim for unreasonable delay.

Respectfully submitted this 11th day of September, 2020.

By: *s/ Colin C. Campbell*
Colin C. Campbell (CO Bar No. 12193)
CAMPBELL WAGNER FRAZIER & DVORCHAK, LLC
5251 DTC Parkway, Suite 350
Greenwood Village, CO 80111
(303) 831-5990
Email: ccampbell@cwfd-law.net
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of September, 2020, I presented the foregoing **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM FOR UNREASONABLE DELAY IN PAYMENT OF BENEFITS** to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of the filing to the following:

Christopher P. Peirce, Esq.
Jeffrey T. Embry, Esq.
Hossley & Embry, LLP
100 Fillmore Street, 5th Floor
Denver, CO 80206
Telephone: (303) 385-8471
Fax: (303) 385-8401
E-Mail: cpeirce@hossleyembry.com
jeff@hossleyembry.com
*Attorneys for Plaintiff*

*s/ Stacey M. Curtin*
Stacey M. Curtin