**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-CV-2145-DDD-NYW

RDA HOTEL MANAGEMENT COMPANY, and
LAKEWOOD HOTEL COMPANY,

Plaintiffs,

v.

HUDSON SPECIALTY INSURANCE COMPANY,

Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON AFFIMATIVE DEFENSES OF WAIVER, ESTOPPEL AND LACHES**

---

Defendant Hudson Specialty Insurance Company, by its attorneys Campbell, Wagner, Frazier & Dvorchak, LLC, hereby submits its Response Brief in opposition to Plaintiff's Motion for Partial Summary Judgment on Hudson's affirmative defenses of waiver, estoppel and laches.

## INTRODUCTION

RDA submitted a hail loss claim in May 2017 under its property insurance policy issued by Hudson Specialty Insurance Company ("Hudson"). Hudson has paid RDA for those hail losses confirmed to have occurred by Hudson’s forensic engineering consultants. Through this lawsuit, RDA asserts that Hudson has not recognized all of the hail loss sustained by the Hotel, and that payments made by Hudson were untimely.

Hudson asserts that RDA has not sustained any hail loss for which Hudson has not already paid, and that Hudson’s investigation and payments were reasonable and timely under the circumstances. Hudson has also submitted affirmative defenses

premised in part upon the fact that RDA unreasonably delayed in bringing certain aspects of its claimed damages to Hudson's attention.

RDA has now moved for summary judgment on Hudson's affirmative defenses of waiver, estoppel and laches upon grounds that no competent evidence has been presented to support such defenses. In making this argument, RDA posits that it promptly presented a claim for "extensive damage to Plaintiffs' property, including the roofing system, windows and interior," and that it supplemented its notice of loss as new information became available.

However, RDA mischaracterizes the claim handling history and ignores certain key facts. In presenting its claim to Hudson, RDA did not identify extensive damage to the hotel's roof, windows and interior. Rather, RDA informed Hudson that based upon its chief engineer's observations and consultation with the hotel's repair contractors, it had identified only the following specific and limited areas of hail damage:

- Cracking and denting to skylights over the pool
- A hole in the top external layer of one skylight over the lobby
- Two cracked windows in fitness center
- A hole in a window outside of guest room 708
- Broken window pane at southern end of third floor
- Ceiling leak at the south side of the lobby skylights
- Holes in the window framing (i.e., plastic sill covers) on west facing guest room windows

At the time it presented its list of identified hail damage, RDA was aware, in the person of its chief engineer Craig Ulrich, that hailstones had dented certain soft metal

components to the hotel's exterior. However, RDA with input from its repair contractors, chose not to include these components of damage in its hail loss claim. Mr. Ulrich has explained that he did not consider the dents to such soft metal coverings to be a matter of any significance or concern, since the very purpose of such metal coverings was to protect underlying surfaces from hail.

Upon receipt of RDA's notice of claim, Hudson hired an outside adjuster, Bill Walls to help investigate and adjust the loss. Mr. Walls walked the property with Mr. Ulrich, and generally agreed with Mr. Ulrich as to the scope of hail loss to the hotel. During this walk through, Mr. Ulrich did not bring the soft metal dents to Mr. Walls' attention. In consultation with the Hotel's general manager Briana Miller, Mr. Walls agreed to rely upon the bids to be submitted by RDA's own repair contractors, Seagren Construction and Glass Systems to identify scope and cost of necessary repair, rather than bringing in separate contractors who would be less familiar with the Hotel.

Upon eventual receipt of the repair bid submitted by Seagren Construction and Glass Systems, Mr. Walls prepared, on Hudson's behalf, a Statement of Loss which contemplated repair of each of the items of hail damage identified by RDA's own repair contractors. The cost of the received repair bids amounted to $145,553, with an actual cash value of $101,576. Since RDA's insurance policy with Hudson contained a $100,000 deductible, in October of 2017 RDA withdrew its insurance claim.

Eighteen months later, RDA, through a retained public adjuster, submitted an estimate through which RDA claimed hail damage beyond that previously identified by its building engineer and repair contractors. The April 2019 estimate contemplated replacement of the hotel's aged roof and curtain wall systems, as well as replacement of

the soft metals dented by hail (mechanical equipment covers, parapet wall cap flashings and curtain wall vertical trim).

Hudson agreed to perform a re-inspection in response to RDA's request to renew its claim. Hudson's consulting engineers involved in the re-inspection, J.S. Held and Haag Engineering, did verify damage to the soft metals in the form of the mechanical equipment covers, parapet wall cap flashing and vertical trim. Upon receipt of the consulting engineers' reports, Hudson promptly paid RDA actual cash value for the cost to repair its damage, consistent with J.S. Held's repair estimate.

The terms of the subject insurance policy obligated RDA to deliver to Hudson within 90 days a Proof of Loss giving a complete inventory of the damaged property, as well as value and particulars of the amount of loss claimed. Hudson submits that RDA's election not to assert a claim for additional hail damage until 23 months after the subject storm, despite having been aware of aspects of such damage at the time of its initial walkthrough, and despite RDA having withdrawn its claim in October 2017, provides competent evidence in support of Hudson's waiver, estoppel and laches defenses.

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

RDA’s Motion does not reference its Statement of Material Facts as “undisputed”, nor does it set forth those alleged facts by separately numbered paragraphs, as called for by DDD Civ. P.S. III(E)1.a. Nonetheless, Hudson will set forth its position with regard to those alleged facts referenced in this section of Plaintiffs’ Motion.

1. Admitted that the May 8, 2017 hailstorm caused some damage to the Hotel, but denied that the Hotel’s roof or curtain wall systems were damaged by the storm. Exhibit A, J.S. Held’s investigative report at p. 14-16.

2. Admitted that RDA identified perceived areas of hail damage through a May 19, 2017 email authored by the Hotel's general manager, Briana Miller. Denied that this list included any perceived damage to the Hotel's roofing and curtain wall systems. Exhibit B, May 19, 2017 email.

3. Admitted that Hudson retained an outside adjuster, Bill Walls, to assist in investigating and adjusting the loss. Further admitted that Mr. Walls, upon receipt of repair bids submitted by RDA's chosen repair contractors, prepared a Statement of Loss which contemplated repair of each of those areas of damage identified through Ms. Miller's May 19, 2017 email. Exhibit C, MCL Global October 10, 2017 report and attachments.

4. Admitted that Mr. Walls' Statement of Loss calculated the replacement value of these contemplated repairs to be $145,553, and the actual cash value of the repairs (i.e., less depreciation) to be $101,576.

5. Admitted that on October 18, 2017, RDA informed Mr. Walls that in consideration of its $100,000 policy deductible, RDA had chosen to withdraw its claim. Exhibit D, Briana Miller email.

6. Admitted that 18 months thereafter, RDA through its public adjuster requested Hudson to re-open its claim, and asserted a claim for new categories of hail damage which had not previously been brought to Hudson's attention.

7. Admitted that Hudson agreed to re-open RDA's claim under a reservation of rights.

8. Admitted that Hudson hired two forensic engineering consulting firms, J.S. Held and Haag Engineering to conduct a re-investigation.

9. Admitted that upon receipt of J. S. Held's and Haag Engineering's reports, Hudson promptly paid to RDA benefits commensurate with J. S. Held's repair estimate. Exhibit E, Hudson August 29, 2019 letter.

10. Admitted that Hudson has acknowledged its obligation to investigate the reported hail loss. Denied that Hudson acted improperly in choosing to involve RDA's own repair contractors in such investigation, in order to pursue a cooperative and coordinated effort between both insurer and insured to arrive at an estimated scope and cost of repair. Hudson 30(b)(6) depo., pp. 115-117.

11. Denied that Hudson's 2017 investigation was inadequate. Exhibit F, Powers report, at pp. 2, 9, 14-15.

12. Denied that Hudson misrepresented the facts with regard to the investigated loss through its 2017 communications with RDA. Exhibit F, Powers report at pp. 2, 9.

## STATEMENT OF ADDITIONAL DISPUTED FACTS

1. Hail dents which cause neither functional nor aesthetic harm do not constitute direct physical loss. Beyer depo, p. 12-15; Powers depo., pp. 32-34.

2. RDA chief building engineer Craig Ulrich was aware of denting to soft metal covers to HVAC equipment and parapet walls in May of 2017, but RDA did not include these conditions in its hail loss claim. Ulrich depo, pp. 46, 58.

## ARGUMENT

### A. Hudson did not utilize an incorrect understanding of "direct physical loss."

As Plaintiffs observe, the Hudson policy does not define "direct physical loss." Plaintiffs do not proffer what they consider the correct interpretation of this term to be.

Despite this, RDA's Motion nonetheless criticizes Bill Walls for incorporating a functional loss requirement into his evaluation.

Hudson submits that RDA's criticism of Mr. Wells is misplaced, as applicable claim handling standards do indeed consider functional damage to be a component of direct physical loss. The phrase "direct physical loss" has been interpreted to encompass both functional as well as aesthetic impairment to property. *See Rankin v. USAA Cas. Ins. Co.*, 271 F.Supp.3d 1218, 1232 (D. Colo. 2017). While either functional or aesthetic impairment may connote direct physical loss, one or both of these impairments must be present for coverage under the policy to apply.

The respective claim handling experts endorsed by each party agree on this point. RDA's retained expert, Leslie Byer acknowledged in deposition that function and aesthetics are the two components of direct physical loss. Hudson's endorsed claim handling expert, Brendan Powers, concurs with this premise.

This distinction is critical to understanding RDA's 23-month delay in asserting a claim for hail damage to the hotel's soft metal components. Mr. Ulrich, as the chief building engineer, was the RDA representative most knowledgeable concerning the hail damage sustained in the storm. Mr. Ulrich confirmed that he was aware following the storm that hailstones had dented various aspects of the soft metal coverings to the Hotel's exterior. RDA did not include this condition on its list of observed hail damage because in Mr. Ulrich's view, this condition did not impair function, was not visible to hotel guests, and thus was not a matter of concern.

Mr. Ulrich's explanation of why he did not bring soft metal denting to Mr. Wall's attention is consistent with the definition of direct physical loss set forth in *Rankin v.*

*USAA, supra*. RDA withdrew its insurance claim in October of 2017 in light of this same understanding.

**B. RDA owed an obligation to Hudson to promptly provide an inventory of damaged property, with a computation of claimed amounts of loss.**

RDA's Motion presumes that RDA's role in the claim handling process is purely passive. In actuality, its insurance policy with Hudson, as well as applicable claim handling standards recognized by both parties' respective experts, call for RDA to work with Hudson on a cooperative basis to reach agreement between them as to the scope of an incurred hail loss, as well as the cost to perform appropriate repair.

Section 31 of the Policy requires RDA to provide within 90 days of the loss a Proof of Loss giving "a complete inventory of the damaged property and showing in detail quantities, costs, value and particulars of amount of loss claimed."

If RDA wished to include the perceived damage to the soft metals as part of its claim, it was contractually obligated to provide notice of such component of its claim no later than 90 days after the May 8, 2017 storm occurred. Instead, RDA chose not to assert a claim for such damage until April 19, 2019, some 23 months after the loss and 20 months after its proof of loss was due.

RDA's own claim handling expert, Ms. Beyer acknowledged in deposition that RDA should have brought all components of damage to Hudson's attention once RDA became aware of it. Beyer deposition, p. 106. Ms. Beyer further clarified the importance that an insured notify its insurer of any additional damage of which it is aware, but is not reflected in the insurer's initial estimate. Ms. Beyer described such reciprocal and

interactive involvement by the insured to be good practice which she observed to be followed in 99.9% of property claims. Beyer deposition, pp. 22-23.

Hudson considers the evidence discussed above to satisfy each element of the respective defenses of waiver, estoppel and laches. The following will address each of these in order.

**C. Waiver.**

Per Colorado Jury Instruction 30:25, the defense of waiver is proven if the Plaintiff knew that the defendant has not performed under its contract, and the Plaintiff knowingly gave up the right to demand performance. *See Associates of San Lazaro v. San Lazaro Park Properties*, 864 P.2d 111 (Colo. 1993). In this instance, RDA knew that the hail storm had dented certain areas of soft metal coverings on the Hotel's exterior, but chose not to include this condition in its hail loss claim. RDA further chose not to provide a complete inventory of perceived damage within 90 days of the loss as called for by section 31 of the Policy, and elected to withdraw its insurance claim. RDA's choice not to raise an issue regarding perceived damage to soft metals until 23 months after the hail loss is a waiver under the policy of this aspect of its damages claim.

**D. Estoppel.**

The essential elements of estoppel consist of (1) false representation or concealment of material facts inconsistent with the party's subsequent assertion of the facts, (2) an expectation that such conduct shall be acted upon by the other party, and (3) reasonable reliance by the other party upon the conduct of the party estopped. *Siminoe v. Kelling*, 607 P.2d 1289, 1291 (Colo. 1980).

Here, RDA submitted bids for the cost to repair hail damage identified by RDA's own repair contractors, Seagren Construction and Glass Systems. RDA did not provide an inventory claiming any additional hail related damages beyond that reflected by the Seagren Construction and Glass Systems' bids, despite its obligation to do so. Indeed, RDA withdrew its claim. Hudson reasonably relied upon RDA's submitted bids, lack of additional inventory of claimed damage, and RDA's withdrawal of its claim to accept that RDA and Hudson were in agreement by October 2017 as to the scope and cost of repair. RDA now seeks to use this apparent understanding between the parties against Hudson by alleging that Hudson was untimely in acknowledging the presence of hail dents to soft metals, even though RDA was aware of such condition from the very outset of the claim. These circumstances meet each of the elements of estoppel.

**E. Laches.**

The doctrine of laches "contemplates an unconscionable delay in asserting one's rights which works to the defendant's prejudice or injury in relation to the subject matter of the litigation." *Lin Ron, Inc. v. Mann's World of Arts & Crafts, Inc*., 624 P.2d 1343 (Colo. App. 1981). Here, RDA's decision to wait until April 2019 to assert a claim for perceived damage to soft metals of which RDA had been aware since May 2017 comprises an unconscionable delay.

Hudson paid for the damage to the soft metal covers and trim upon re-inspection, so the resulting prejudice does not center on that aspect of RDA's contract claim. However, Plaintiff's claim for unreasonable delay against Hudson does bring prejudice into play. The only reason that it took as long as it did to adjust RDA's claim for hail damage to soft metal is that RDA chose to wait 23 months to present this aspect of its

claim. RDA created the delay which it now seeks to use as fodder for statutory damages under C.R.S. 10-3-1115.

## CONCLUSION

RDA chose to wait 23 months to bring to Hudson's attention aspects of its claim of which it became aware shortly after the May 2017 hail storm, and withdrew its claim for an extended time in the process. This election was in derogation of RDA's obligations under the policy, and led to the ensuing delay which RDA now seeks to use against Hudson in pursuing its claim for unreasonable delay. Hudson accordingly requests that RDA's Motion for summary judgment on the affirmative defenses of waiver, estoppel and laches be denied.

Respectfully submitted this 11th day of September, 2020.

By: *s/ Colin C. Campbell*

Colin C. Campbell (CO Bar No. 12193)
CAMPBELL WAGNER FRAZIER & DVORCHAK, LLC
5251 DTC Parkway, Suite 350
Greenwood Village, CO 80111
(303) 831-5990
Email: ccampbell@cwfd-law.net
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of September, 2020, I presented the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES OF WAIVER, ESTOPPEL AND LACHES** to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of the filing to the following:

Christopher P. Peirce, Esq.
Jeffrey T. Embry, Esq.
Hossley & Embry, LLP
100 Fillmore Street, 5th Floor
Denver, CO 80206
Telephone: (303) 385-8471
Fax: (303) 385-8401
E-Mail: cpeirce@hossleyembry.com
jeff@hossleyembry.com
*Attorneys for Plaintiff*

*s/ Stacey M. Curtin*
Stacey M. Curtin